# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ALTON MARKS                                          CIVIL ACTION

VERSUS                                               NO. 12-1132

TERRY TERRELL, WARDEN                                SECTION "B"(4)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    State Factual and Procedural Background

The  petitioner, Alton Marks ("Marks"), is a convicted inmate incarcerated in the Allen Correctional Center in Kinder, Louisiana.[2]   On July 7, 2008, Marks was charged by bill of

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

information in Jefferson with being a felon in possession of a firearm.[3]  He entered a plea of not guilty to the charge on July 10, 2008.[4]

The record reflects that, at trial, Marks stipulated that he was the same person who was previously convicted of attempted possession of heroin in violation of La. Rev. Stat. Ann. § 40:966 and § 40:979 in case number 468-029 in Orleans Parish Criminal District Court.[5]  The Trial Court allowed the State to admit certified copies of documents from the Orleans Parish case showing that Marks entered a plea of guilty on August 21, 2007, that he received a suspended sentence of two years, and that he was placed on one year of active probation and one year of inactive probation.

Kawauna Ceasor, a probation officer with the State of Louisiana's Division of Probation and Parole, was assigned to the Jefferson Parish District.  She took over the supervision of Marks on August 31, 2007, after he changed his physical address from New Orleans to 1665 Alexander Street, Apartment A, in Terrytown, Louisiana.

Ceasor's records showed that Marks was advised of the conditions of his probation when he initially reported to the Orleans District on August 27, 2007.  Among those conditions was the requirement that he not be in any residence, structure, or vehicle that contained a firearm.  He was also notified that, as a probationer, he was prohibited from storing weapons on his premises, and he must ensure that visitors do not bring weapons into his home.

Ceasor visited Marks at the Alexander Court address on October 10, 2007, and he allowed her into the apartment.  He stated he was on home incarceration with a 6:00 p.m. curfew, and that

[3]St. Rec. Vol. 1 of 5, Bill of Information, 7/7/08.

[4]St. Rec. Vol. 1 of 5, Minute Entry, 7/10/08.

[5]The facts were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal.  *State v. Marks*, 30 So.3d 342, 345-47 (La. App. 4th Cir. 2009); St. Rec. Vol. 1 of 5, 5th Cir. Opinion, 09-KA-260, pp. 3-7, 10/27/09.

he was complying with the restrictions imposed by Orleans Parish Drug Court. Ceasor visited Marks again at the Alexander Court apartment on January 8, 2008, and he again allowed her into the residence. There were some occasions when Ceasor attempted to make official visits to the apartment, and Marks was not at home. In those instances, Ceasor left her card, and Marks responded by telephoning her.

Later in January of 2008, Ceasor was in an accident, and was limited to desk duty. While she was on limited duty, Agent Bryan Polson assisted her in monitoring Marks' case. Polson tried to contact Marks at the Alexander Court apartment three times after January of 2008, to no avail.

On April 24, 2008, Ceasor spoke with Marks by telephone, and he informed her that he was having trouble accessing his mailbox at 1665 Alexander Court. He wanted her to mail future correspondence to his mother's address on Charbonnet Street. He also told Ceasor that he had no other changes to report, including his physical address.

When Polson visited 1665 Alexander Court, Apartment A, on May 16, 2008, at 11:40 a.m, he knocked at the door, and Danielle Jones answered the door. Jones lived with Marks at the apartment from October of 2007 through February of 2008. Her five-year-old daughter also lived with them. Marks did not rent the apartment with her, but he did reside there.

Polson identified himself as a probation officer and explained that he was there as a courtesy to Ms. Ceasor to supervise Marks. Jones told him that Marks had already left for a drug court meeting in New Orleans. Polson stepped inside the apartment to look around.

As he walked into the apartment, he could see into every room on the first floor. Polson noticed an open pantry door next to the kitchen. On one of the shelves inside the pantry, Polson saw four boxes of ammunition inside another open cardboard box. Based on experience, he knew that

two of the boxes contained AK47 ammunition, one box was .9 millimeter hollow point, and the remaining box was .45 caliber hollow point ammunition. The ammunition caused him concern, since a probationer is not allowed to have a dangerous weapon or ammunition. His visit then turned from an observation into a more thorough investigation once he saw the ammunition.

Next, in order to protect himself and the child that resided in the apartment, Polson went upstairs to check the master bedroom. He opened the top drawer of a dresser next to the bed and found another box of .45 caliber hollow point bullets, with 11 rounds missing.

At that point, Jones became very nervous. She was speaking to Marks on the telephone, and she gave the phone to Polson. Polson told Marks why he was at the apartment, and asked Marks to come there. Marks said he could not get there because he had just finished with drug court, and he was on his way to work. Marks telephoned the apartment two more times and stated that he was at work, but he refused to give Polson the address of his work location.

As Polson was finishing his third telephone conversation with Marks, Jones headed toward the bathroom. Polson asked her to stop because he had not searched the bathroom yet, and, with five boxes of ammunition already found, he was concerned for his safety. Jones refused to comply. Polson handcuffed her, placed her on the end of the bed, and told her to stay there. He told her she was not under arrest, but was being detained for his safety as well as her own.

Polson opened a closet door in the bedroom, and immediately saw the butt of a gun on the top shelf, partially covered by a pair of jeans and some hats. He took the gun and cleared it. There were ten rounds in the magazine and one in the chamber. The bullets were .45 caliber hollow points.

Polson asked Jones several times whether she knew who owned the gun, and she replied that she did not. Polson asked Jones who was living in the apartment, and she responded that no one

lived there except Marks, herself, and her child. Jones would later testify that she told Polson it was her gun, and that her child's father had given her the gun and ammunition for protection after her neighbor's house was burglarized. She got the gun sometime in early to mid-May of 2008.

Polson continued to search, but did not seize anything else. He called 9-1-1 and asked for a Jefferson Parish deputy to assist him. When the deputy ran a trace on the gun, the records did not show that the gun was reported stolen.

Captain Ralph Dunne of the Jefferson Parish Sheriff's Office is the commander of the Jail Management Section. He maintains records pertaining to arrestees and was formerly the supervisor at Intake Booking for the Jefferson Parish Correctional Center. Captain Dunne's records contained an appearance bond that Marks' completed and signed at the correctional center upon his release from the facility on March 10, 2008. The address given by Marks on the bond was 1665 Alexander Court, Apartment A, in Gretna, Louisiana. The form contains a provision that states that the signer swears, under penalty of law, that the information is true and correct, and that the signer is obligated to notify the court of any change of address.

Captain Dunne also identified at trial for defense counsel a restraining order issued by a criminal commissioner on February 29, 2008, against Marks in an unrelated domestic violence matter, which commanded Marks to stay away from 1665 Alexander Court, Apartment A. According to Jones, in late February of 2008, she had a falling out with Marks. As a result, he was removed from her home and placed under the restraining order that expired on May 29, 2008.

At a hearing held on August 22, 2008, prior to the start of trial, the Trial Court denied Marks' motions to suppress the evidence.[6] Marks thereafter was tried before a jury on August 22 and 23, 2008, and he was found guilty as charged.[7]

On November 6, 2008, the Trial Court sentenced Marks to serve 15 years in prison without benefit of parole, probation, or suspension of sentence.[8] The State also filed a multiple bill charging Marks as a second offender.[9] The Trial Court later denied Marks' motions to reconsider the original sentence.[10]

At a hearing held March 11, 2009, the Trial Court denied Marks' motion to quash the multiple bill.[11] Marks thereafter entered a plea of guilty to the multiple bill.[12] The Court resentenced him that day to serve 15 years in prison as a multiple offender without benefit of parole, probation, or suspension of sentence.[13]

On direct appeal, Marks' counsel raised two errors:[14] (1) the evidence was insufficient to prove guilt beyond a reasonable doubt when the State failed to prove constructive possession of the

---

[6]St. Rec. Vol. 1 of 5, Hearing Minutes, 8/22/08; Pretrial Motions, 8/13/08; St. Rec. Vol. 2 of 5, Hearing Transcript, 8/22/08.

[7]St. Rec. Vol. 1 of 5, Trial Minutes, 10/22/08; Trial Minutes, 10/23/08; St. Rec. Vol. 2 of 5, Jury Verdict, 10/23/08; Trial Transcript, 10/23/08; St. Rec. Vol. 3 of 5, Trial Transcript (continued), 10/23/08; St. Rec. Vol. 4 of 5, Trial Transcript, 10/22/08.

[8]St. Rec. Vol. 1of 5, Sentencing Minutes, 11/6/08; St. Rec. Vol. 3 of 5, Sentencing Transcript, 11/6/08.

[9]*Id.*; St. Rec. Vol. 1 of 5, Multiple Bill, 11/6/08.

[10]St. Rec. Vol. 1 of 5, Minute Entry, 2/10/09; Motion to Reconsider Sentence, 12/3/08.

[11]St. Rec. Vol. 1 of 5, Multiple Bill Hearing Minutes, 3/11/09; Motion to Quash, 3/10/09.

[12]*Id.*; St. Rec. Vol. 1of 5, Waiver of Rights - Plea of Guilty Multiple Offender, 3/11/09.

[13]*Id.*

[14]St. Rec. Vol. 3 of 5, Appeal Brief, 09-KA-260, p. 4, 5/4/09; Reply Brief, 09-KA-260, 6/11/09.

weapon; and (2) the Trial Court erred in denying the motion to suppress the evidence when the probation officer did not have consent nor a reasonable suspicion to enter. On October 27, 2009, the Louisiana Fifth Circuit Court of Appeal affirmed Marks' conviction finding no merit in either claim.[15]

On November 25, 2009, Marks' counsel filed a writ application to the Louisiana Supreme Court which was denied by the Court without stated reasons on May 7, 2010.[16] Marks' conviction became final 90 days later, on August 5, 2010, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

On March 17, 2011, Marks submitted an application for post-conviction relief to the Trial Court in which he raised six grounds for relief:[17] (1) There were numerous instances of prosecutorial misconduct; (2) The trial judge was biased or prejudice; (3) Unconstitutional reasonable doubt jury charge; (4) Destruction of the presumption of innocence when the jury saw him in shackles; (5) ineffective assistance of appellate counsel for failure to raise the shackle issue on appeal; and (6) The Trial Court exceeded its jurisdiction when resentencing him as a second offender to a sentence at hard labor. By supplemental memorandum submitted April 20, 2011, Marks added two additional

---

[15]*State v. Marks*, 30 So.3d at 353; St. Rec. Vol. 1 of 5, 5th Cir. Opinion, 09-KA-260, p. 16, 10/27/09.

[16]*State v. Marks*, 34 So.3d 860, 860 (La. 2010); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2009-K-2568, 5/7/10; La. S. Ct. Writ Application, 09-K-2568, 11/25/09; St. Rec. Vol. 1 of 5, La. S. Ct. Letter, 2009-K-2568, 11/25/09.

[17]St. Rec. Vol. 1 of 5, Uniform Application for Post-Conviction Relief, Memorandum in Support, p. 4, 3/22/11 (dated 3/17/11).

claims:[18] (7) Impermissible comments made in the presence of the jury; and (8) Cumulative effect of all errors.

After receiving the State's response to the memoranda, the Trial Court denied Marks' application on May 12, 2011. The Court found that claim numbers one, two, three, four, six, seven, and eight, were procedurally barred from review pursuant to La. Code Crim. P. art. 930.4(B) and (C), because the claims inexcusably were not raised in the proceedings leading to conviction or on direct appeal.[19] The Court further found that claim numbers six and eight also were not cognizable on post-conviction review under La. Code Crim. P. art. 930.3.[20] The Court also cited *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996) and *State v. Hebreard*, 708 So.2d 1291 (La. App. 4th Cir. 1998), as additional support for refusing review of claim number six as challenging prohibited multiple bill and sentencing issues. The Court thereafter denied claim number five, ineffective assistance of appellate counsel, as meritless under *Strickland v. Washington*, 466 U.S. 668 (1984).

Marks sought further review in the Louisiana Fifth Circuit raising four grounds:[21] (1) the Trial Court erred in denying post-conviction relief as to claim numbers one, two, three, four, six, seven and eight on procedural grounds under La. Code Crim. P. art. 930.4(B) and (C); (2) the Trial Court erred in denying relief on claim numbers six and eight on procedural grounds under La. Code

---

[18]St. Rec. Vol. 1 of 5, Supplemental Memorandum, 4/26/11 (dated 4/20/11); *see also*, Trial Court Order, 5/9/11.

[19]St. Rec. Vol. 1 of 5, Trial Court Order, 5/12/11; State's Response, 5/2/11. La. Code Crim. P. art. 930.4(B), and (C), which prohibit post-conviction review of claims that were known and inexcusably not raised in proceedings leading to the conviction or which were not pursued on appeal. La. Code Crim. P. art. 930.3 sets forth the grounds on which post-conviction relief can be granted.

[20]In *State ex rel. Melinie*, 665 So.2d at 1172, the Louisiana Supreme Court, relying on La. Code Crim. P. art. 930.3, ruled that claims of excessive sentence or errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief. The *Hebreard* case applied this to challenges to multiple bill proceedings.

[21]St. Rec. Vol. 5 of 5, Copy of 5th Cir. Writ Application, 11-KH-614, dated June 10, 2011. According to the Court's later issued order, the application was filed on June 16, 2011. St. Rec. Vol. 1 of 5, 5th Cir. Order, 11-KH-614, 6/24/11.

Crim. P. art. 930.3; (3) the Trial Court erred in denying post-conviction relief on claim number six pursuant to La. Code Crim. P. art. 930.3 and *State ex rel. Melinie*; and (4) the Trial Court erred in denying post-conviction relief on claim number five as meritless.

On June 24, 2011, the Louisiana Fifth Circuit denied Marks' writ application finding no error in the Trial Court's ruling.[22] The Court acknowledged the propriety of the imposition of the procedural bars imposed on claims one, two, three, four, seven, and eight. The Court also agreed that Marks failed to prove a deficient performance of prejudice by appellate counsel. As for claim six, the Court did not comment on the procedural bar; instead, the Court commented that a habitual offender sentence is computed by reference to the sentencing provisions of the underlying offense and the conditions imposed are those called for in the statute, citing *State v. Jones*, 51 So.3d 792 (La. App. 5th Cir. 2010).

Marks submitted a writ application to the Louisiana Supreme Court on July 5, 2011, raising the same four arguments presented to the Louisiana Fifth Circuit.[23] The Court denied the writ application without stated reasons on April 9, 2012.[24]

## II.    <u>Federal Petition</u>

On June 4, 2012, the clerk of this Court filed Marks' federal petition for habeas corpus relief in which he raised two grounds for relief:[25] (1) The evidence was insufficient to support the verdict; (2) The Trial Court erred in denying the motion to suppress the evidence; (3) The prosecutor

---

[22]St. Rec. Vol. 1 of 5, 5th Cir. Order, 11-KH-614, 6/24/11.

[23]St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 11-KH-1544, 7/13/11 (dated 7/5/11, postal metered 7/6/11).

[24]*State ex rel. Marks v. State*, 85 So.3d 140, 140 (La. 2012); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2011-KH-1544, 4/9/12.

[25]Rec. Doc. No. 3, p. 19.

committed numerous instances of prosecutorial misconduct; (4) The trial judge was biased or prejudice; (5) The Trial Court gave an unconstitutional reasonable doubt jury charge; (6) The presumption of innocence was destroyed when the jury saw Marks in shackles; (7) Ineffective assistance of appellate counsel for failure to raise the shackle issue on appeal; (8) The Trial Court exceeded its jurisdiction when resentencing him as a second offender to a sentence at hard labor; (9) Impermissible comments made in the presence of the jury; and (10) Cumulative effect of all errors.

The State filed a response in opposition to Marks' petition conceding its timely filing.[26]  The State argues that seven of Marks' claims are not exhausted, because none of them were specifically raised to the Louisiana Fifth Circuit or the Louisiana Supreme on post-conviction review.  The State further argues, however, because the procedural bars to review were affirmed by the Louisiana Fifth Circuit, and tacitly adopted by the Louisiana Supreme Court, those same seven claims are procedurally barred from federal habeas review.  The State made no further comment on the remaining claims that were not subject to the procedural bar and prays for dismissal of the petition, because the claims are unexhausted.

## III.    **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[27] applies to this petition, which is deemed filed in this Court no later than May

---

[26]Rec. Doc. No. 9.

[27]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

1, 2012.[28]   The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record shows that Marks timely filed his federal petition.  The State challenges Marks exhaustion of state court remedies of seven of his claims and relies on the procedural bars imposed by the state courts.

Before proceeding to these defenses, the Court is compelled to note that two of Marks' claims, insufficient evidence (claim one) and denial of the motion to suppress evidence (claim two), were raised on direct appeal and reviewed by the Louisiana Supreme Court.  These claims clearly are exhausted, contrary to the State's suggestion.

In addition, Marks' ineffective assistance of appellate counsel  claim (claim seven), raised in his state post-conviction application, was addressed on the merits by the Trial Court.  Marks challenged the denial of relief without a hearing as to that claim in his post-conviction writs to the Louisiana Fifth Circuit and the Louisiana Supreme Court.  The Louisiana Fifth Circuit found no error in the denial of relief on that claim which it too addressed on the <u>merits</u>.  This was tacitly

---

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Marks' federal habeas petition on June 4, 2012, when the fee was received after denial of pauper status.  Marks' signed the form petition on May 1, 2012.  This is the earliest date in the record on which he could have delivered the pleadings to prison officials for mailing.  The fact that he later paid the filing fee also would not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 377).

accepted by the Louisiana Supreme Court by its one word denial of Marks' related writ application. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-03 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion). This claim also has been exhausted on the merits, contrary to the State's response.

Finally, with respect to Marks' claim that the Trial Court exceeded its jurisdiction in the multiple offender sentencing (claim eight), also raised on state post-conviction, the Trial Court procedurally rejected the claim on three grounds, citing La. Code Crim. P. art. 930.4(C), La. Code Crim. P. art. 930.3, *State ex rel. Melinie*, and *State v. Hebreard*. In his writ application to the Louisiana Fifth Circuit, Marks argued that his claim could not be barred under La. Code Crim. P. art. 930.3 and related case law, because he raised a jurisdictional matter that in fact was reviewable on post-conviction under Article 930.3.

Noticeably, and contrary to the State's arguments, the Louisiana Fifth Circuit did **not** list this claim, i.e. "claim six," in its order approving the imposition of the procedural bars by the Trial Court on other claims. Instead, the Court separately wrote and addressed this claim as follows:[29]

> In claim 6, relator alleged that the trial court exceeded its jurisdiction in sentencing the defendant to hard labor, claiming that the multiple offender statute did not provide such a condition. However, when a defendant is sentenced as a habitual offender, the penalty increase is computed by reference to the sentencing provision of the underlying offense, and the conditions imposed on the sentence are those called for in the referenced statute. *State v. Jones*, 10-281, (La. App. 5 Cir. 10/26/10), 51 So.3d 792.

In making these comments, and in failing to recognize or mention the procedural bar previously applied by the Trial Court, it appears that the Louisiana Fifth Circuit addressed the <u>merits</u>

---

[29]St. Rec. Vol. 1 of 5, 5th Cir. Order, 11-KH-614, 6/24/11.

of this claim.  At best, the Court's comments left this a possibility that must be construed in favor

of Marks.  That is, the last reasoned opinion on this claim appears to have been on the merits, albeit

it under state law, with no comment on the procedural bar.  This claim also now is exhausted.

The Court further recognizes, however, that there are six other claims raised by Marks in his

state post-conviction application that were not specifically presented in substance to, or addressed

on the merits by, the Louisiana Fifth Circuit or the Louisiana Supreme Court.  As mentioned, Marks

instead only challenged the imposition of the procedural bars to those claims; he did not argue the

merits of the claims in the higher courts.  He instead asked that the circuit court reverse the

procedural bars and for the matter be remanded for the Trial Court to address the merits.[30]  The

Louisiana Fifth Circuit and the Louisiana Supreme Court instead accepted the procedural bars

imposed on their review of these claims.

Thus, while the State is correct that these claims are not properly exhausted, it is equally

correct that these claims are in procedural default and barred from federal review.  Because relief

will not be granted here, the Court will proceed to address the procedural defense to these claims

and the merits of the other claims already exhausted.  28 U.S.C. § 2254(b)(2).

## IV.     Procedural Default (Claims Three, Four, Five, Six, Nine, and Ten)

The State has argued that six of Marks' claims (claims three, four, five, six, nine, and ten)

are in procedural default, having been dismissed by the state courts as procedurally barred from

review.  Generally, a federal court will not review a question of federal law decided by a state court

if the decision of that state court rests on a state law ground that is both independent of the merits

of the federal claim and adequate to support that judgment.  *Coleman v. Thompson*, 501 U.S. 722,

---

[30]St. Rec. Vol. 5 of 5, Copy of 5th Cir. Writ Application, 11-KH-614, p. 9, dated June 10, 2011.

731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 & n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).  The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review.  *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338.  This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

Using the numbers indicated in his federal petition, the six claims subject to procedural dismissal are: (3) The prosecutor committed numerous instances of prosecutorial misconduct; (4) The trial judge was biased or prejudice; (5) The Trial Court gave an unconstitutional reasonable doubt jury charge; (6) The presumption of innocence was destroyed when the jury saw Marks in shackles; (9) Impermissible comments made in the presence of the jury; and (10) Cumulative effect of all errors.

In addressing these claims, the state courts found each of them to be barred from review under La. Code Crim. P. art. 930.4(B) and (C), and for the last claim, cumulative error, the Court also found it to be inappropriate for post-conviction review under La. Code Crim. P. art. 930.3. Because these bars were approved by the Louisiana Fifth Circuit, they stand as the last reason for denial of relief on these issues.  *Ylst*, 501 U.S. at 801-03.

The Court must consider whether the bars to review relied upon by the Louisiana courts prohibit consideration of the claims on federal habeas corpus review.  As discussed above, for a

state-imposed procedural bar to prevent review by this federal habeas court, the bar must be both independent and adequate.

## A.     Independent State Grounds

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar.  *Amos*, 61 F.3d at 338.  In this case, Louisiana Fifth Circuit approved the denial of relief based on state statutory rules to bar review of Marks' claims, citing La. Code Crim. P. arts. 930.3 and 930.4(B) and (C).  As discussed above, Article 930.3 delineates the grounds on which post-conviction review can be obtained.  Article 930.4(B) prohibits review of a claim that was known and inexcusably not raised in the proceedings leading to the conviction.  Article 930.4(C) similarly prohibits review of a claim that was inexcusably not pursued on direct appeal.

The state courts' rulings were based on Louisiana law setting forth the requirements for preservation and presentation of claims on appellate and post-conviction review.  These rulings were therefore independent of federal law and relied strictly on state procedural requirements.  *See Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994) (Art. 930.4); *Washington v. Cain*, 2000 WL 863980, at *4 (E.D. La. June 27, 2000) (Art. 930.4); *see also*, *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

## B.     Adequate State Grounds

The question of the adequacy of a state procedural bar is itself a federal question.  *Beard v. Kindler*, 558 U.S. 53, __, 130 S.Ct. 612, 617 (2009) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).  To be adequate, the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Walker v. Martin*, __U.S.__, 131 S.Ct. 1120,

1127-28 (2011); *Glover*, 128 F.3d at 902. A state procedural rule, however, "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard*, 130 S.Ct. at 617-18.

In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F. Supp. 2d 655, 674 (S.D. Tex. 1999). Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *See Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985) and *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)). In keeping with this, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094, at *4 n.2 (N.D. Ill. July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar. *Davis v. Johnson*, No. 00CV684-Y, 2001 WL 611164, at *4 n.10 (N.D. Tex. May 30, 2001); *see also Johnson v. Lensing*, No. 99-0005,

1999 WL 562728, at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, No. 97-1546, 1999 WL 518843, at *4 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied). It is not, however, within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy. *Lee v. Cain*, No. 03-2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing Art. 930.3 as applied to ineffective assistance of counsel claim). Thus, where such foundation and basis does exist, as it does in this case, the bar must stand.

As noted above, the state trial court barred Marks' claims, pursuant to La. Code Crim. P. art. 930.4(B) and (C) for failure to raise the claims in an appropriate manner. In addition, the state courts found that Marks failed to provide a merited excuse for his failure to do so. The record supports the imposition of this procedural bar. Marks does not and can not contest that these barred claims were not presented in earlier proceedings or on direct appeal when they could have been.

The federal courts have held that the bars imposed under Article 930.4(B) and (C) are adequate to foreclose federal review of a claim barred thereunder by the state courts. *Cf. Thomas v. Cain*, No. 11-02103, 2012 WL 1885088, at *4 (E.D. La. May 23, 2012) (Lemelle, J.) (finding Article 930.4(B) independent and adequate to bar claim challenging expert witness testimony); *Simmons v. Cain*, No. 06-2130, 2008 WL 2185422, at *6 (E.D. La. May 20, 2008) (Berrigan, J.) (finding Article 930.4(B) and (C) independent and adequate to bar trial errors raised on post-conviction that were not raised at trial or on appeal); *Monroe v. Cain*, No. 05-0929, 2006 WL 5507856, at *8 (E.D. La. Oct. 17, 2006) (finding Article 930.4(B) and (C) independent and adequate to bar prosecutorial misconduct claims and others not raised at trial or on appeal), *adopted as*

*modified on other grounds*, *Monroe v. Cain*, No. 05-0929, 2008 WL 818968, at *1 (E.D. La. Mar. 24, 2008) (Berrigan, J.).

The Court also notes that the Trial Court alternatively barred the cumulative error claim under La. Code Crim. P. art. 930.3, which does not allow for review of such a claim on post-conviction. This bar has also been found adequate to bar cumulative error claims, which are not cognizable under Louisiana law. *Turner v. Cain*, No. 08-1477, 2009 WL 1409973, at *14 (E.D. La. May 20, 2009) (Africk, J.) (Order adopting reference Report and Recommendation). The bar is also adequate in this situation.

For the foregoing reasons, the bars imposed on Marks' claims of prosecutorial misconduct (claim three), biased trial judge (claim four), unconstitutional reasonable doubt jury charge (claim five), shackles seen by jury (claim six), impermissible comments (claim nine), and cumulative error (claim ten), are supported by the record and are adequate to foreclose review by this federal court. Because the Louisiana courts' decisions rested on independent and adequate state rules of procedural default, this court will not review Marks' claims unless he established one of the following exceptions.

### C.    <u>Cause and Prejudice</u>

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *see Engle v. Isaac*, 456 U.S. 107, 128 & n.33 (1982))

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486; *see also Martinez v. Ryan*, __ U.S. __, 132 S.Ct. 1309, 1316 (2012) (discussing when counsel's error may be cause to overcome a procedural default) (citing *Coleman*, 501 U.S. at 753, 755).

In this case, Marks has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts. The Court's review of the record does not support a finding that any factor external to the defense prevented Marks from raising the claims in a procedurally proper manner. In connection with his claim that counsel's error contributed to the default of the challenge to the shackles issue, as is further discussed in this report, that claim is without merit and does not stand as cause for the default. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474, 477 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Marks' defaulted claims are therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded

when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[31]

## D. <u>Fundamental Miscarriage of Justice</u>

Marks may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Marks does not present any claim and the record contains nothing to suggest or establish his actual innocence on the underlying conviction. His claims instead address alleged procedural failings in the state criminal proceedings and not his actual innocence. He presents no evidence or argument of the kind of actual innocence that would excuse his procedural default. He, therefore,

---

[31]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not <u>required</u> to raise the procedural default argument sua sponte. *Id.*

has failed to overcome the procedural bar to his claims. The six claims, prosecutorial misconduct (claim three), biased trial judge (claim four), unconstitutional reasonable doubt jury charge (claim five), shackles seen by jury (claim six), impermissible comments (claim nine), and cumulative error (claim ten) are procedurally barred and should be dismissed with prejudice.

## V.     Standards of Review on the Merits of the Remaining Claims

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court

decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *Penry*. The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

**VI.**     <u>**Insufficient Evidence (Claim One)**</u>

Marks alleges that the State failed to present sufficient evidence to prove that he had constructive possession of the weapon found in the apartment. He claims that they did not prove that he had dominion and control over the gun in an apartment from which he had been forced out pursuant to a restraining order obtained by Jones. Marks also claims that the State failed to establish that he had the requisite guilty knowledge by showing a connection between him and the gun.

The appropriate standard for determining the sufficiency of evidence is that set forth by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979), which was relied upon by the state appellate court.[32] Claims of insufficient evidence present a mixed question of law and fact. *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008). The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of *Jackson*. *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

Under *Jackson*, a court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez*, 529 F.3d at 594; *Williams v. Cain*, 408 Fed. App'x. 817, 821 (5th Cir. 2011). To determine whether the commission of a crime is adequately supported by the record, the court must review the substantive

---

[32]The Court first notes, however, Louisiana law allows a crime to be proven by circumstantial evidence. Under Louisiana law, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. Ann. § 15:438. However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, but must apply the *Jackson* and AEDPA standards of review. *Gilley*, 968 F.2d at 468 (citing *Schrader*, 904 F.2d at 284).

elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*); *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995).

The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, __, 130 S.Ct. 665, 672-73 (2010) (recognizing that a reviewing court is to consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 Fed. App'x. 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at trial.") (quoting *Jackson*, 443 U.S. at 324). Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses; those determinations are the exclusive province of the jury. *United States v. Young*, 107 Fed. App'x. 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). Thus, all credibility choices and conflicting inferences are to be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005). A reviewing habeas court is not authorized to substitute its interpretation of the evidence or the credibility of witnesses for that of the fact-finder. *Weeks*, 55 F.3d at 1062. In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).

In Louisiana, the offense of being a previously convicted felon in possession of a weapon is defined as follows: "It is unlawful for any person who has been convicted of . . . any violation of the Uniform Controlled Dangerous Substances law which is a felony, . . . to possess a firearm or

carry a concealed weapon." La. Rev. Stat. Ann. § 14:95.1(A). To sustain a conviction for possession of a firearm by a convicted felon, the State had to prove the following elements of the offense: (1) possession of a firearm, (2) prior conviction for an enumerated felony, (3) absence of the ten-year statutory limitation period, and (4) the general intent to commit the crime. *State v. Caffrey*, 15 So.3d 198, 202 (La. App. 5th Cir. 2009); *State v. Ray*, 961 So.2d 607, 610 (La. App. 2d Cir. 2007); *State v. Robert*, 956 So.2d 750, 754 (La. App. 2d Cir. 2007). Under La. Rev. Stat. Ann. § 14:2(A)(4), a felony is defined as a crime for which the offender may be sentenced to death or imprisonment at hard labor.[33]

Specific intent is not necessary for a conviction as a previously convicted felon in possession of a firearm. Instead, general intent is all that is required, and it may be proved through either the actual or constructive possession of a firearm. *State v. Law*, 46 So.3d 764, 770 (La. App. 2d Cir. 2010); *State v. Jamerson*, 1 So.3d 827, 831 (La. App. 2d Cir. 2009). Constructive possession of a firearm occurs when the firearm is subject to the defendant's dominion and control. *State v. Law*, 46 So.3d at 770. Constructive possession involves an element of awareness or knowledge that the firearm is there and the general intent to possess it. *Id.* General intent may be inferred from the circumstance of the transaction and proved by direct or circumstantial evidence. *State v. Brokenberry*, 942 So.2d 1209, 1213 (La. App. 2d Cir. 2006); *State v. Culp*, 17 So.3d 429, 435 (La. App. 2d Cir. 2009). Determination of whether the requisite intent is present in a criminal case is for the trier of fact. *State v. Brown*, 92 So.3d 579, 585 (La. App. 2d Cir. 2012) (citing *State v. Huizar*, 414 So.2d 741 (La. 1982)).

---

[33]Marks stipulated at trial that he had a prior conviction for the felony of attempted possession of heroin, for which he was on probation at the time of his arrest for the charges underlying this petition and his sentence expired less than ten years before commission of this offense. *State v. Marks*, 28 So.3d at 345; St. Rec. Vol. 1 of 5, 5th Cir. Opinion, 09-KA-260, p. 3, 10/27/09; St. Rec. Vol. 2 of 5, Trial Transcript, pp. 3-4, 10/23/08.

Marks challenges the evidence to establish that he resided in, or had some dominion and control over, the apartment and that he had guilty knowledge, or was knowingly in possession of the firearm. He does not challenge the other factors to be proven. Because the gun was not on his person, the evidence must have established his constructive possession through a showing of his dominion and control and guilty knowledge.

The trial transcript convincingly demonstrates that the evidence was more than sufficient to support the jury's verdict that he was in constructive possession of the firearm. The evidence at trial established that, after he moved into Jefferson Parish, Marks repeatedly indicated to officials that his residence address was 1665 Alexander Court, Apartment A, Terrytown, Louisiana.[34] Marks was provided with the terms of his probation which directed in part that he refrain from owning or possessing dangerous weapons, including firearms and ammunition.[35] He also was not to move from his residence of record without notifying the probation officer.[36]

He did not report any such change of address to his probation officer, and he indicated to her, Officer Ceasor, that he was still living there on April 24 and 28, 2008.[37] During his April 28 visit with Ceasor, he asked her to send his mail to his mother's address, but he did not report a change in residence.[38]

---

[34]St. Rec. Vol 2 of 5, Trial Transcript, pp. 39, 45, 46 (Ceasor), p. 71 (Dunne), p. 88 (Polson), 10/23/08. Dunne indicated that the address was in Gretna.

[35]Id., pp. 32, 38 (Ceasor); St. Rec. Vol. 3 of 5, Trial Transcript (continued), p. 90 (Polson), 10/23/08.

[36]Id., p. 39 (Ceasor).

[37]Id., pp. 42, 43, 48 (Ceasor).

[38]Id., pp. 48-49, 55, 57 (Ceasor).

On May 16, 2008, Agent Polson conducted the field inspection for Ceasor.[39] When Danielle Jones came to the door, she told Polson that Marks had just left to go to a drug court meeting in New Orleans.[40] Polson stepped inside of the opened door to take a quick look around and to see if Marks was still living there, since he had been unsuccessful in reaching him at least four times before.[41] As he spoke with Jones, he walked around the apartment and caught site of an opened box of ammunition in the opened pantry.[42] This caused Polson to continue with a more thorough search which led to the discovery of more ammunition in the dresser drawer in the master bedroom.[43]

During the search, when Jones spoke with Marks on the telephone, Polson got on the phone to ask Marks to return to the apartment.[44] Marks told him that he had just finished drug court, he was heading to work, he could not come to the apartment, and he would call Polson back.[45]

Marks apparently called back twice while Polson was still conducting a search. Marks told Polson he could not come to the apartment because he was renovating his mother's house. During a third conversation, Marks would not provide Polson with an exact address of where he was. Polson continued to search the apartment, after having to restrain Jones for his safety, and located a gun in the bedroom closet. The gun, a 45 caliber Taurus handgun, was partially covered by large

---

[39]*Id.*, p. 44 (Ceasor).

[40]St. Rec. Vol. 3 of 5, Trial Transcript (continued), p. 89 (Polson), 10/23/08.

[41]*Id.*, p. 89 (Polson).

[42]*Id.*, p. 90 (Polson).

[43]*Id.*, pp. 90-91 (Polson).

[44]*Id.*, p. 91 (Polson).

[45]*Id.*, p. 92 (Polson).

male clothing which belonged to Marks.[46]  The ammunition in the gun matched the ammunition found in the dresser drawer.  Jones told him she did not know who owned the gun.[47]  She also told Polson that Marks, she and her daughter, were the only people who lived in the apartment.[48]  Polson also found a picture of Marks and another man on the same shelf as the gun and clothing.[49]  Polson called 911 for assistance from a deputy.

The jury had before it evidence tending to establish that Marks kept possessions and lived at 1665 Alexander Court and reported to his probation officer that he lived there and continued to do so in spite of the restraining order.  This was also confirmed by Jones's statement to Polson that Marks had just left the apartment that morning to go to court.  Jones did not tell Polson that Marks no longer lived there.  She even called Marks when Polson was searching their apartment.  Marks had also told Ceasor shortly before Polson's visit that he had no change of living address, although he had difficulty getting mail at Alexander Court.  Neither Marks nor Jones ever told Polson that he no longer lived in that apartment.

The credible evidence showed that Marks had dominion and control over the apartment he shared with Jones, the apartment where the ammunition and gun were located.  The jury apparently did not find Jones's testimony to be credible, something left solely to their authority.  A reasonable jury could find that this was sufficient evidence to establish dominion and control over the apartment in which the ammunition and gun were found.

---

[46]*Id.*, pp. 92, 102 (Polson).

[47]*Id.*, p. 93 (Polson).

[48]*Id.*, p. 92 (Polson).

[49]*Id.*, p. 97 (Polson).

As discussed above, as to Marks' guilty knowledge, the jury heard testimony that Marks had been made aware of his obligation to stay away from dangerous weapons. When Polson discovered the ammunition, Jones contacted Marks to advise him of what was happening.[50] Marks refused to return to the apartment and otherwise failed to cooperate with Polson over the phone. As mentioned above, the jury could look to the circumstances to establish his guilty knowledge and general intent. *State v. Brokenberry*, 942 So.2d at 1213. There was no legal requirement that the State find fingerprints or any direct evidence of his guilty knowledge. Instead, his failure to cooperate and avoid contact with Polson were sufficient for a jury to find general intent and guilty knowledge arising from the circumstances. *State v. Ennis*, --- So.3d ----, 2012 WL 2629228, at * 5 (La. App. 4th Cir. Jul. 5, 2012) (failure to fully cooperate with police can imply criminal intent); *cf. State in the Interest of J.W.*, 95 So.3d 1181, 1187 (La. App. 4th Cir. Jun. 6, 2012) (a defendant's flight from police can be considered evidence of guilty knowledge) (citing *State v. Petit*, 463 So.2d 749 (La. App. 4th Cir.1985), *and Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000)).

Marks has failed to establish that the state courts erred in finding sufficient evidence to prove him to be a felon in possession of the weapon in the car. The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of *Jackson*.

**VII**.     **Denial of the Motion to Suppress (Claim Two)**

Marks alleges that Polson performed an illegal search of his apartment. He argues that Polson did not have consent or reasonable suspicion to enter the apartment.

---

[50]*Id.*, p. 139 (Jones).

The Trial Court held a full hearing on Marks' motion to suppress on August 22, 2008.[51] After hearing testimony from Agent Polson and the argument of counsel, the Trial Court denied the motion to suppress the evidence.[52]

As outlined above, Marks' appointed counsel also challenged the denial of the motion to suppress the evidence on direct appeal. The Louisiana Fifth Circuit found that Jones had given her consent, an exception to the warrant requirement, for Polson to enter the apartment when she opened the door wider to allow him to enter after he identified himself and his purpose. The Court also noted that Jones testified at trial that she gave him permission to enter. The Court also indicated that the first ammunition found was in plain view, which met another exception to the warrant requirement. This also gave him reasonable suspicion to support the more thorough search. This was the last reasoned opinion on this issue, because the Louisiana Supreme Court denied the subsequent writ application without stated reasons. *Ylst*, 501 U.S. at 801-03.

Fourth Amendment violations are generally not cognizable on federal habeas review. *Stone v. Powell*, 428 U.S. 465, 485-86 (1976). In *Stone v. Powell*, the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (footnotes omitted) *Id.* at 494. A "full and fair" hearing as contemplated by *Stone v. Powell* refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a

---

[51]St. Rec. Vol. 1 of 5, Hearing Minutes, 8/22/08; St. Rec. Vol. 2 of 5, Hearing Transcript, 8/22/08.

[52]*Id.*

higher state court.  *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)).

The United States Court of Appeals for the Fifth Circuit has further interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity." *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002), *cert. denied*, 537 U.S. 1196 (2003).  "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Caver*, 577 F.2d at 1192.

Thus, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the *Stone v. Powell* prohibition, without regard for whether that opportunity is actually exercised or is unsuccessful.  *Janecka*, 301 F.3d at 320-21.  Even if a defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the fact that the opportunity existed suffices for the *Stone v. Powell* bar to apply.  *Id*. at 320.  The Fifth Circuit also has held that the *Stone v. Powell* bar applies despite an error by the state court in deciding the merits of the Fourth Amendment claim.  *Swicegood v. Alabama*, 577 F.2d 1322, 1324-1325 (5th Cir. 1978).

Therefore, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way to prevent the actual litigation of fourth amendment claims on the merits, the rationale of *Caver* dictates that *Swicegood*'s application of *Stone* despite a mistake in adjudicating the merits must apply with equal force to procedural mistakes that thwart the presentation of fourth amendment

claims." *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980) (punctuation in original); *see also*, *Janecka*, 301 F.3d at 321 (same).  Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded.  *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987); *Davis*, 803 F.2d at 1372.

Johnson does not allege or demonstrate that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims, and as is shown in the record, he received appropriate review in the state courts.  Moreover, "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." *Bailey v. Cain*, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) ( Duval, J.) (order adopting Report and Recommendation).

In this case, Marks raised his Fourth Amendment claims in the pretrial motion to suppress and on direct appeal.  As outlined above, the state trial court denied the motion to suppress finding that Polson properly entered the apartment and that the evidence was properly seized under the circumstances.  The Louisiana Fifth Circuit also denied his claim on direct appeal, as did the Louisiana Supreme Court in his subsequent writ application.

The record, therefore, demonstrates that Marks was provided with ample opportunity to and did present his Fourth Amendment claim, although his efforts were unsuccessful.  After reviewing the record, the Court finds that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims." *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994) (quotations and citation omitted).  Each of the state courts considered and reviewed his

arguments finding them to be without merit.  The fact that petitioner may disagree with the state

courts' decision to deny relief is not sufficient to overcome the bar in *Stone v. Powell* to federal

habeas corpus review.  *Janecka*, 301 F.3d at 320-21.  The review at all levels of the state courts was

sufficient to meet due process requirements.

Marks is not entitled to federal habeas court review of his Fourth Amendment claims.

Because he received and exercised the opportunity for a full and fair hearing in the state courts,

*Stone v. Powell* bars consideration of his Fourth Amendment claim here.

## VIII.  Ineffective Assistance of Appellate Counsel (Claim Seven)

Marks alleges that his appellate counsel provided ineffective assistance when he failed to

raise the issue that Marks appeared before the jury wearing shackles.[53]  Marks alleges that, during

trial, the Court directed him at the prosecutions request to stand next to Jones during one point in

her testimony.  Over his counsel's objection, he walked over to stand next to her while he was

wearing shackles and the jury not only could see him but was supposed to see the size difference

between him and Jones.

Marks raised this claim in his application for post-conviction relief.  The Trial Court, citing

*Strickland v. Washington*, 466 U.S. 668 (1984), found that Marks did not establish that appellate

counsel failed to raise a claim that would have been successful or change the outcome of the

appeal.[54]  In making this finding, the Court determined that the transcript did not establish that

Marks was in shackles.  In addition, defense counsel's objection was not specific and did not

---

[53]As mentioned previously, Marks also asserted here and in the state courts that this is a basis for cause to overcome the procedural bar imposed by the state courts to review of the shackle claim itself.  Because the claims is meritless, there also was no showing of cause.

[54]St. Rec. Vol. 1 of 5, Trial Court Order, 5/12/11.

mention shackles. The Louisiana Fifth Circuit also found that Marks made no showing of deficient performance or prejudice to that Court.[55] The Louisiana Supreme Court also denied relief without comment.[56]

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009). The question is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The appropriate standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of

---

[55]St. Rec. Vol. 1 of 5, 5th Cir. Order, 11-KH-614, 6/24/11.

[56]*State ex rel. Marks*, 85 So.2d at 140; St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2011-KH-1544, 4/9/12.

counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S.Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S.Ct. at 792.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross*, 694 F.2d at 1012).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S.Ct. at 788. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen*, 131 S.Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

The proper standard for evaluating a claim that appellate counsel was ineffective in raising issues on direct appeal is that set forth in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). In applying this standard, the petitioner must establish that his appellate counsel unreasonably failed to discover and raise a nonfrivolous issue and show a reasonable probability that, but for his counsel's unreasonable failure to raise the issue, he would have prevailed on his appeal. *Smith*, 528 U.S. at 285.

In this case, as determined by the state courts, Marks has still failed to provide any support for his suggestion that he was in shackles when he was called to stand up before the jury at trial. The transcript indicates that, during Jones's testimony, the prosecutor requested to have Jones stand next to Marks "for size purposes."[57] Marks' counsel said "Objection, Judge."[58] There is no mention of shackles at all by counsel or the Court. A review of the entire transcript does not reflect any notation by the Court or counsel that Marks was in shackles during trial. Even if he had been, Marks also does not suggest or establish that he notified appellate counsel that he was in shackles at any point during trial, much less when he stood before the jury.

There is no basis, therefore, for appellate counsel to have known from the record and transcript presented to him for review that shackles could have been raised as an issue. Counsel cannot be expected to raise an issue that is not discoverable from the record he was provided.

In fact, the Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not raise every nonfrivolous claim; instead, counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Thus, it would have been within appellate counsel's discretion to exclude even a non-frivolous issue if that issue was unlikely to prevail. *See Anderson v. Quarterman*, 204 Fed. Appx. 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal ... lack merit. As such, failure to raise these issues did not prejudice Anderson."); *Penson v. Ohio*, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); *Kossie*

---

[57]St. Rec. Vol. 3 of 5, Trial Transcript (continued), p. 153, 10/23/08.

[58]*Id.*

37

*v. Thaler*, 423 Fed. Appx. 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's premise that only when ignored claims are stronger than those raised will the presumption of effectiveness be overcome) (citing *Smith*, 528 U.S. at 288).

Marks has failed to establish that the state courts' denial of relief on this issue was contrary to, or an unreasonable application of, Supreme Court law. He is not entitled to relief on this claim.

## IX.    Jurisdiction in Imposing Sentence (Claim Eight)

Marks alleges that the state trial court exceeded its authority or jurisdiction in imposing his habitual offender sentence at hard labor. Marks claims that Louisiana law did not provide for such a restriction until August 15, 2010, when the law was changed to include it. In other words, he claims that the habitual offender law in effect at the time of his sentencing did not authorize the sentence to be at hard labor. For that reason, he also is not supposed to be in the custody of the Louisiana Department of Corrections. This restriction, he claims, also made his sentence excessive and prohibited under the Louisiana Constitution.

Although this claim was procedurally barred by the Trial Court on post-conviction review, the Louisiana Fifth Circuit addressed the claim on the merits. In denying relief, the Court held that the penalty for a habitual offender is necessarily bounded by the terms of the sentencing provisions for the underlying offense.[59]

Marks' claim is that his habitual offender sentence is excessive or otherwise inappropriate under Louisiana law. The claim is based solely on Louisiana law and the interpretation and application of its sentencing provisions. This federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d

---

[59]St. Rec. Vol. 1 of 5, 5th Cir. Order, 11-KH-614, 6/24/11.

64, 67 (5th Cir. 1994) (quotation omitted); *see also Swarthout v. Cooke*, __ U.S. __, 131 S.Ct. 859, 861 (2011) (federal habeas review does not lie for errors under state law); *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998). Instead, this court's analysis focuses on due process considerations, and due process requires that the court grant habeas relief when the errors of the state court make the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986). Marks has not presented such an error or shown a denial of due process.

In fact, the premise of Marks claim is not legally or factually accurate, as alluded to by the state appellate court. As Marks concedes and the Louisiana Fifth Circuit noted, a habitual offender sentence is an enhancement of the prison term based on the sentencing provisions of the underlying crime as set forth in Louisiana's Habitual Offender Statute at La. Rev. Stat. Ann. § 15:529.1.[60]

Under Louisiana's habitual offender laws at the time, as a second offender, Marks' sentence was to be not less than one-half of the longest term and not more than twice the longest term prescribed for a first offense. La. Rev. Stat. Ann. § 15:529.1 (West 2008). Marks was convicted as a felon in possession of a weapon pursuant to La. Rev. Stat. Ann. § 14:95.1. Under that statute at the time, Marks faced a sentence imprisonment at "<u>hard labor</u>" for not less than ten nor more than twenty years without benefit of parole, probation, or suspension of sentence and a fine of not less than $1,000.00 nor more than $5,000.00. (emphasis added) La. Rev. Stat. Ann. § 14:95.1 (West 2008).

Applying these statutes, Marks' habitual offender prison sentence was to be imprisonment at <u>hard labor</u> for not less than 10 years nor more than 40 years without benefit of parole, probation

---

[60]Under Louisiana law, the habitual offender law does not authorize a fine. *State v. Jones*, 51 So.3d at 797 n.5.

or suspension of sentence.  He appropriately received a 15 years sentence at hard labor, without benefit of parole, probation, or suspension of sentence.

The hard labor designation carried forward with the enhanced habitual offender sentence as set forth in and required by Louisiana law.  Marks' suggestion of error is not legally or factually correct and his claim does not implicate the Due Process Clause.

Marks has failed to present a cognizable federal claim or demonstrate a due process violation contrary to federal law.  He is not entitled to relief on this claim.

## X.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Alton Marks' petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[61]

New Orleans, Louisiana, this 8th day of November, 2012.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[61]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.